# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Misc. Case Nos.  07-069 (RWR)(AK) |
| v. | ) | 07-077 (RWR)(AK) |
| | ) | 07-103 (RWR)(AK) |
| GREGORY BELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| EDGEWOOD MANAGEMENT | ) | |
| CORPORATION, WALLACE "PETE" | ) | |
| CLARK, AND DECOLA JONES, | ) | |
| | ) | |
| Movants. | ) | |
| | ) | |

## MEMORANDUM ORDER

Pending before the Court are four Motions: Edgewood Management Corporation's Motion for Protective Order ("Edgewood Motion for Protective Order") [docket entry no. 1, misc. case no. 07-mc-069], Wallace "Pete" Clark's Motion for Protective Order ("Clark Motion") [docket entry no. 3, misc. case no. 07-mc-069], DeCola Jones's Motion for Protective Order ("Jones Motion") [docket entry no. 1, misc. case no. 07-mc-077] and Edgewood Management Corporation's Motion for Protective Order/Motion to Reconsider Minute Order ("Motion to Reconsider") [docket entry no. 1, misc. case no. 07-mc-103]. For the reasons set forth below, Edgewood's Motion for Protective Order is **GRANTED in part and DENIED in part**, Clark's Motion is **GRANTED in part and DENIED in part**, Jones's Motion is

**GRANTED in part and DENIED in part** and Edgewood's Motion to Reconsider is

**GRANTED**.

I.    **Background**

A.    **The Criminal Case**

Gregory Bell ("Defendant" or "Bell"), along with several others, has been charged in this

court with multiple counts involving racketeering, conspiracy to distribute narcotics, murder and

other violent acts.  (*See* Superseding Indictment ("Indictment") dated 11/16/2006, docket entry

no. 544, *United States v. Ball, et al.*, 05-cr-100 (RWR).)  According to the Indictment, Defendant

Bell and his co-conspirators engaged in many of their alleged criminal activities in and around

the Congress Park neighborhood in the Southeast area of Washington, DC.  (*See id.* at 3.)

To aid his defense, Defendant has sought records from Edgewood Management

Corporation ("Edgewood"), the property manager for Congress Park Apartments, a public

housing complex in the Congress Park neighborhood.  To this end, he has served (or has

attempted to serve) several subpoenas *duces tecum* on Edgewood, its employees or its attorneys.[1]

---

[1]To the Court's knowledge, Bell has issued the following five subpoenas *duces tecum* on Edgewood or persons connected with Edgewood: (a) a subpoena for "Anne McGruder," issued December 14, 2006 ("Subpoena A"); (b) a subpoena for "Custodian of Records, Edgewood Management," issued December 29, 2006  ("Subpoena B"); (c) a subpoena for "Custodian of Records, Edgewood Management," issued January 16, 2006 ("Subpoena C"); (d) a subpoena for "De'Cola Jones, Community Manager, Congress Park I & II Apts, Edgewood Management," issued February 7, 2007 ("February 7 Subpoena," "Jones Subpoena" or "Subpoena D"); and (e) a subpoena for "Edgewood Management, c/o Corporation Service Company," issued February 12, 2007 ("February 12 Subpoena," "Edgewood Subpoena," or "Subpoena E").

Counsel for Edgewood moved to quash Subpoenas A through D, citing improper service. Following a February 12, 2007 telephone conference with the parties, the Court issued minute orders granting without objection the motions to quash Subpoenas A through C.  However, at that time, the Court declined to take action with regard to Subpoena D.

Only two of these subpoenas are at issue here: (1) the February 7 Jones Subpoena and (2) the February 12 Edgewood Subpoena. Attached to each of these Subpoenas is a List of Requested Documents ("List") seeking Edgewood records pertaining to, *inter alia*, various tenants, apartments, employees or third-party contractors of Edgewood or Congress Park Apartments.[2] In response to these Subpoenas, Jones and Edgewood filed separate Motions for Protective Order. In their Motions, both Jones and Edgewood ask the Court to limit the scope of their responses to the Subpoenas.[3]

Wallace "Pete" Clark, an individual named in both the Jones and Edgewood Subpoenas, has also filed a Motion for Protective Order. In his Motion, Clark seeks to prevent the disclosure of any information relating to him or his relatives.

## II.    Legal Standard

Federal Rule of Criminal Procedure 17(c), which governs subpoenas *duces tecum* in a criminal case, states:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). A subpoena *duces tecum* issued under Rule 17(c) is not intended as a discovery device, but to aid the moving party in obtaining relevant evidentiary materials in

---

[2]The Lists in the Edgewood and Jones Subpoenas are virtually identical to one another.

[3]Edgewood and Jones are represented by the same counsel.

advance of trial.  *United States v. Libby*, 432 F. Supp. 2d 26, 30 (D.D.C. 2006) (citations omitted).

Rule 17(c) also provides for the quashing or modification of a subpoena *duces tecum* if the court finds that "compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).  Pursuant to this rule, the party seeking the production of documents under Rule 17(c) "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *United States v. Nixon*, 418 U.S. 683, 700 (1974).  In assessing the first two hurdles, the court will require that the requested documents be *arguably* relevant and admissible under the Federal Rules of Evidence.  *See Libby*, 432, F. Supp. 2d at 31 (citation omitted).  A party can clear the specificity hurdle by showing, through rational inferences, a sufficient likelihood that a requested item contains relevant information.  *See Nixon*, 418 U.S. at 700.

### III.    The February 12, 2007 Edgewood Subpoena

As mentioned above, the Edgewood Subpoena contains a List of Requested Documents ("List") seeking records containing information about, *inter alia*, tenants, apartments, employees and third-party contractors of Edgewood or Congress Park Apartments.  (*See* Edgewood Mot. for Prot. Order, Ex. 1.)  The List parses Bell's request into 19 separate categories.  (*See id.*)

#### A.    Edgewood's Objection Regarding Time Scope

Edgewood raises a general objection regarding the time scope of the Subpoena.  Specifically, Edgewood states that most of the requests in the Subpoena contain no time range that would limit its responses.  (*See* Edgewood Mot. for Prot. Order at 4.)  Thus, according to Edgewood, the Subpoena requires it to produce documents dating back indefinitely.

This issue is now largely moot.  During a February 23, 2007 hearing, counsel for Bell, James Beane, ("Beane" or "Bell's Counsel") agreed to limit the scope of Bell's requests to the time period between 1999 and the present.[4]  (2/23/2007 Hr'g Tr. ("Hr'g Tr.") at 4:25-27.)  The Court finds that this time range is reasonable.  Thus, the Court will limit the scope of the Edgewood Subpoena to the time period between 1999 and the present.  However, where the Subpoena already limits the scope of responsive documents to a narrower period than 1999 to present, the narrower time period shall apply.

The Court will now address each of the 19 List categories.

**B.    Category No. 1**

Bell's first List category requests the following gallimaufry of information:

1.    Information for the following people and/or apartments, including but not limited to:

    1.1.    Dates of Birth
    1.2.    Social Security Numbers
    1.3.    Emergency contact information
    1.4.    Forwarding addresses and phone numbers
    1.5.    All information on employment, including but not limited to, name, address and telephone number of employer and dates of employment.
    1.6.    All information on relatives, including but not limited to, names, addresses and telephone numbers, dates of birth, social security numbers, spouses, employment, schools, etc.
    1.7.    All notes, reports, memorandum and other documents detailing rental violations, disputes, complaints, law enforcement interactions, lawsuits, and allegations.
    1.8.    Any and all information on business relationships or other relationships, including but not limited to; contracts, agreements,

---

[4]Bell's counsel also proposed, and agreed to, this limit during a telephone conference with counsel for Edgewood, held before the Court on February 15, 2007.

> proposals, negotiations, notes, memos, letters, emails, files, time
> cards, W-2 Forms, tax documents, contact information and any and
> all documentation

(Edgewood Mot. for Prot. Order, Ex. 1.)  Bell apparently intends that Edgewood repeatedly apply

these eight "overarching" requests to the 18 subsequent categories.  However, as is plainly

apparent, not all of the overarching requests apply to every subsequent category.  For instance,

some of the overarching requests seek information for natural persons, such as dates of birth and

social security numbers, despite the fact that many of the 18 subsequent categories pertain only to

businesses or organizations.

Requests 1.1 through 1.6 seek records containing private information about tenants

named in some of the subsequent 18 categories.  Bell indicated at the February 23 hearing that he

seeks such records in order to locate these tenants and potentially call them as witnesses.  (*See,

e.g.*, Hr'g Tr. at 4:27-4:33; 4:47-4:48; 5:06-5:10.)  Edgewood objects to releasing documents

containing such private information about its tenants, arguing that doing so could, given the

nature of this case, expose them to intimidation, personal harm or property damage.  (*See*

Edgewood Mot. for Prot. Order at 6, 8.)  Edgewood also argues that the information contained in

such documents is irrelevant and otherwise procurable by Bell.  (*See id.* at 6-8.)

The Court agrees with Edgewood regarding requests 1.1, 1.2, 1.3, 1.5 and 1.6.  The

information sought by Bell in these requests are to facilitate his search for certain individuals as

possible witnesses.  The Court finds that the information warrants confidentiality and should not

be compelled to be produced by a landlord without a showing of good cause and an inability to

obtain such information from another source.  Moreover, this is a blanket request that includes

many tenants or former tenants who have no relationship with the Defendant or who will not be

6

called as witnesses.  Thus, the Court the Court will not require Edgewood to respond to them.[5]

The Court will not agree to strike request 1.4, which seeks documents containing the forwarding addresses and phone numbers of former tenants.  Such information is not private in the same sense that a social security number is private.  Thus, the Court will consider request 1.4 in relation to the applicable subsequent categories.

Request 1.7 seeks any records "detailing rental violations, disputes, complaints, law enforcement interactions, lawsuits, and allegations."  (*See* Edgewood Mot. for Prot. Order, Ex. 1.)  In summary, it broadly requests Edgewood records detailing conflicts involving any of the people listed in the subsequent categories.  Bell has not indicated why he believes such information is relevant to the trial and why it would be admissible hearsay.  Thus, the Court will not require Edgewood to respond to request 1.7.

Request 1.8 seeks documents showing "business relationships or other relationships," presumably between Edgewood (or Congress Park Apartments) and some of the individuals or entities named in the 18 subsequent categories.  This request does not apply to many of the subsequent categories, such as those seeking information about former tenants who never worked for Edgewood or Congress Park.  However, request 1.8 does apply to at least three categories dealing with former Edgewood employees (*i.e.*, categories 2, 12 and 18), and five others dealing with third-party businesses or organizations (*i.e.*, categories 13-17).  It was the Court's understanding at the February 23 hearing that Bell seeks such documents in order to, among other things, illustrate his legitimate business activities during the relevant time period.  Thus, the

---

[5]Edgewood may redact such private information from any documents that it is required to produce under other parts of the Subpoena.

Court will consider request 1.8 in relation to the applicable subsequent categories.

In summary, the Court will not require Edgewood to respond to requests 1.1, 1.2, 1.3, 1.5, 1.6 and 1.7 under any of the subsequent categories. However, the Court will not strike requests 1.4 and 1.8 outright, but will instead consider them in relation to the applicable subsequent categories.

### C.     Category No. 2: Gregory Bell

List category 2, titled "Gregory Bell," requests the following:

2.1     Any and all records regarding Gregory Bell, including but not limited to;
    2.1.1.  Employment records
    2.1.2.  Proposals of business models submitted to Edgewood
    2.1.3.  Involvement in any companies, organizations or other entities contracted or having business dealings with Edgewood Management
    2.1.4.  Any notes, reports, memos or other materials

(Edgewood Mot. for Prot. Order, Ex. 1.) Edgewood objects to this category on the grounds that (1) Bell has made no showing that records responsive to this request contain relevant information; and (2) such documents are otherwise procurable by Bell. (*See id.* at 9.)

At the February 23 hearing, Bell's Counsel explained that Bell worked as a security guard in the Congress Park neighborhood and also operated a tow-truck business. (*See* Hr'g Tr. at 4:20-4:27.) Bell believes that Edgewood (or Congress Park Apartments) was one of the companies with which he contracted to do such work. (*See id.*) Bell's Counsel further explained that his client needs documents containing information about Bell's past employment in order to rebut the Government's allegations that his business activities were illegitimate. (*See id.*) Bell's Counsel also stated that any documents Bell himself might have possessed in regard to this topic were taken away when his home was searched by police. (*See id.*)

Requests 2.1 and 2.1.4, the first and last requests, respectively, are far too broad. Their sweeping language would likely require Edgewood to produce many documents for which Bell has not demonstrated any relevance. Thus, the Court will disallow 2.1 and 2.1.4 to the extent that they seek documents beyond what is requested in items 2.1.1 through 2.1.3.

The Court now turns to requests 2.1.1, 2.1.2 and 2.1.3.[6] In summary, these requests seek any documents showing that Bell worked for (1) Edgewood or Congress Park Apartments, (2) third-party contractors of Edgewood or Congress Park, or (3) other organizations with which Edgewood or Congress Park had business dealings. Although these requests contain some broad language, the Court finds that such records would tend to show that Bell had an employment or business relationship with these entities. The Court agrees that proof of such relationships is arguably relevant to rebutting the Government's allegations that Bell's business activities were illegitimate. Also, such documents would be arguably admissible as non-hearsay or as records of regularly conducted business activity. *See* Fed. R. Evid. 801(c), 803(6). The Court will therefore require Edgewood to respond to these requests.

In summary, the Court will require Edgewood to respond to requests 2.1.1, 2.1.2 and 2.1.3. However, the Court will not require Edgewood to respond to requests 2.1 or 2.1.4.

### D.    Category Nos. 3, 6 and 18: Rene Cunningham, Toya Gibbs and Bonnie Williams

Categories 3, 6 and 18 seek Edgewood documents or information about three individuals: "Rene Cunningham," "Toya Gibbs" and "Bonnie Williams," respectively. None of these

---

[6]The Court will not apply requests 1.4 and 1.8 to this category. Request 1.4, seeking "forwarding addresses and phone numbers," is inapplicable. Request 1.8, although applicable, is redundant of requests 2.1.1, 2.1.2 and 2.1.3.

categories seeks any specific documents or information.  The Court thus presumes that Bell

intends for the general requests in category 1 to apply.

Category 3 provides the following additional information about Rene Cunningham:

3.1    Resided at 1331 13th Pl, SE #202 in 1991/1992
3.2    Moved from Congress Park in 1998/1999

(Edgewood Mot. for Prot. Order, Ex. 1.)  Also, category 18 indicates that Bonnie Williams is (or

was) an employee of Edgewood.  (*See id*.)

Aside from the objections Edgewood makes in relation to requests in category 1,

Edgewood argues that Bell has not properly identified these individuals or shown how records

pertaining to them are likely to contain relevant information.  (*See* Edgewood Mot. for Prot.

Order at 9, 10, 12.)

During the February 23 hearing, the Court questioned Bell's Counsel about his need for

documents or information about these individuals.  Counsel responded that Ms. Cunnigham and

Ms. Gibbs are potential witness in the case, and he needs information from Edgewood in order to

locate them.  (*See* Hr'g Tr. at 4:27-4:33, 4:47-4:49.)  Although counsel did not identify Ms.

Williams as a potential witnesses, he stated that he needs information on her whereabouts in

order to find her and talk to her.[7]  (*See id.* at 5:05-5:10.)

In accordance with the Court's discussion in Section III-B, *supra*, Edgewood will not be

required to release any records containing personal information such as dates of birth, social

security numbers, emergency contact information and information on relatives.  However, the

---

[7]Bell's Counsel did not mention whether he needs documents showing that these
individuals lived at, or worked for, Edgewood.  Thus, the Court will not apply request 1.8 to
these categories.

Court will require Edgewood to respond to request 1.4 as it relates to these categories. That is, Edgewood shall produce documents containing the forwarding addresses and phone numbers of these three individuals.

**E.    Category Nos. 4, 7, 9 and 11**

Categories 4, 7, 9 and 11 seek documents and information about four separate addresses at Congress Park Apartments.[8] Each of the categories requests a copy of the lease for its respective address during a specific month and year. (Edgewood Mot. for Prot. Order, Ex. 1.) Categories 4, 7, and 9 (but not 11) also request information about the current resident for each respective address. (*Id.*) For example, category 4 reads as follows:

> 4.    <u>1303 Congress St., Unit #30, SE WDC</u>
>    4.1    For the time period of June 2000
>    4.2    Also provide copy of LEASE and RENTAL AGREEMENT for June 2000
>    4.3    Who resides there now?

(*Id.*)

In its Motion for Protective Order, Edgewood argues that Bell has made no showing of how leases for these four addresses would be relevant. (Edgewood Mot. for Prot. Order at 9-11.) Edgewood also argues that Bell has not shown how information on current residents, requested in categories 4, 7, and 9, would be relevant. (*Id.*)

The Court finds that the lease requests under these four categories are very specific and could be produced to Bell with minimal burden. Also, the leases are arguably relevant to Bell's case, as each relates to the time and location of an alleged criminal act involving Bell. Finally, the leases would be arguably admissible as non-hearsay. *See* Fed. R. Evid. 801(c). The Court

---

[8]Requests 1.4 and 1.8 are inapplicable to these categories.

will thus require Edgewood to respond to the lease requests in categories 4, 7, 9 and 11.

However, the Court finds that Bell has shown no arguable basis for obtaining documents showing the current residents of the addresses listed in categories 4, 7 and 9. Thus, the Court will not require Edgewood to respond to requests 4.3, 7.3 and 9.3.

### F.    Category Nos. 5 and 8: Gail Parson and Charlette O'Brien

Categories 5 and 8 request information on an individuals named "Gail Parson" and "Charlette O'Brien," respectively. (Edgewood Mot. for Prot. Order, Ex. 1.) Bell makes no specific document requests in these categories, but presumably intends for information requested in category 1 to apply. To help Edgewood locate documents responsive to these categories, Bell provides additional identifying information for each. (*Id.*) In category 5, for example, Bell provides Ms. Parson's date of birth and social security number. (*Id.*)

At the February 23 hearing, Bell's Counsel explained that Ms. Parson is a witness for the Government in the case against Bell. (*See* Hr'g Tr. at 4:46-4:47.) As such, Bell needs any documents retained by Edgewood regarding her, including leases, agreements and complaints from residents. (*See id.*) Bell's Counsel also explained that he needs similar documents for Charlette O'Brien. (*See id.* at 4:50-4:52.)

After considering the Subpoena, and the statements made at the February 23 hearing, the Court will require Edgewood to produce lease agreements for these two individuals during the relevant time period. Also, in response to request 1.4, Edgewood shall provide any documents containing their forwarding addresses and phone numbers.

### G.    Category No. 10: Mary M. McClendon

Category 10 requests information on an individual named "Mary M. McClendon."  As with categories 5 and 8, no document requests are made within the text of the category itself.  Presumably, Bell intends for his general information requests in category 1 to apply.

Bell's Counsel has provided no explanation as to who Ms. McClendon is or why any documents about her would be relevant or admissible.  (*See* Hr'g Tr. at 4:52.)  Counsel did not distinguish whether Bell seeks to locate her as a potential witnesses, or whether she is a Government witness whom Bell plans to cross examine.[9]  (*See id.*)  Thus, the Court will not require Edgewood to respond to the document requests in category 1 (*i.e.*, requests 1.4 and 1.8) without a showing by Bell of the relevance of such documents.

### H.    Category No. 12: Pete Clark

Category 12, titled "Edgewood Management Employee Pete Clark," states as follows:

12.    <u>EDGEWOOD MANAGEMENT EMPLOYEE PETE CLARK</u>
    12.1.    He worked there approximately 2000-2004
    12.2.    Possibly manager at rental office? Possibly grounds manager?
    *12.3.    Supervisor for Gregory Bell*

(Edgewood Mot. for Prot. Order, Ex. 1 (emphasis in original).)  As this category makes no independent specific document requests, the Court assumes that Bell intends for the requests in category 1 to apply.

---

[9]The Court has gathered on its own that Ms. McClendon was originally indicted as a co-defendant in this case, but is now a witness for the Government.

Mr. Clark himself objects to these requests through a separate Motion for Protective Order.[10]  Clark argues that Bell has not demonstrated why information or documents relating to his employment at Edgewood are relevant to his defense.  (*See* Clark Mot. at 5.)  Clark further argues that the Subpoena, as it applies to him, lacks specificity.  (*See id.* at 6-7.)

At the February 23 hearing, Bell's Counsel claimed that Bell worked for Mr. Clark at Edgewood.  (*See* Hr'g Tr. at 4:53-5:00.)  He explained that Bell needs documents proving that Clark worked at Edgewood in order to show that Bell also worked there.  (*See id.*)

The Court now turns to request 1.8, which is the only applicable request from category 1. As applied, request 1.8 seeks documents showing a "business relationship" between Mr. Clark and Edgewood or Congress Park Apartments.  The Court agrees with Bell that documents showing a business relationship between Clark and Edgewood would be relevant to Bell's claim that he worked for Edgewood.  After considering Bell's request, the Court will require Edgewood to produce all documents reflecting that Mr. Clark was an employee of Edgewood or any of its affiliates during the relevant period.  As set forth in request 1.8, examples of such documents would be employment contracts or W2 tax forms.[11]  Also, such documents would be arguably admissible as non-hearsay or as records of regularly conducted business activity.  *See* Fed. R.

---

[10]Among other things, Mr. Clark objects to Edgewood providing any information about him or his relatives pursuant to requests 1.1-1.6.  (*See generally* Clark Mot.)  However, the Court has already decided that Edgewood will not be required to disclose such information pursuant to requests 1.1-1.3, 1.5 and 1.6.  *See* discussion, *supra*, at Section III-B.  Also, the Court will not apply request 1.4 to this category, as it is inapplicable.

[11]The Court will not require Edgewood to produce time cards for Mr. Clark if doing so would be unduly burdensome.

Evid. 801(c), 803(6). Also, Edgewood shall redact any private information from these documents, such as Mr. Clark's social security number or salary information.

**I.      Category Nos. 13-16**

Edgewood does not object to Bell's requests for documents and information in categories 13 through 16.[12] (Edgewood Mot. for Prot. Order at 11-12.) Thus, there is no need for the Court to address these categories.

**J.      Category No. 17: Other Businesses Edgewood May Have Interacted With**

Category 17 makes the following request:

> 17.      OTHER BUSINESSES EDGEWOOD MANAGEMENT MAY HAVE
> INTERACTED WITH (Including but not limited to the following)
> 17.1.    Making a Neighborhood Network
> 17.2.    Changing Neighborhoods into Communities
> 17.3.    Capitol Area Food bank
> 17.4.    Kimsey Foundation
> 17.5.    Step Foundation

(Edgewood Mot. for Prot. Order, Ex. 1.) At the February 23 hearing, Bell's Counsel explained that the entities listed in items 17.1 through 17.5 are organizations that worked with Congress Park Apartments or Edgewood to improve the neighborhood. (*See* Hr'g Tr. at 5:01-5:05.) According to counsel, Bell believes that he worked with these organizations during the relevant time period and needs documents from Edgewood in order to prove it.[13] (*See id.*)

---

[12]Edgewood agreed to respond to these categories so long as the requests were limited in time. As discussed above in Section III-A, *supra*, the Court has limited the relevant time period to between 1999 and the present.

[13]Edgewood objects to this category primarily on the ground that, because it contains the phrase "including but not limited to," it will be required to produce documents relating to every business that it has interacted with. (Edgewood Mot. for Prot. Order at 12.) The inclusion of this phrase is not itself fatal to the request. The uncertainty about other businesses possibly encompassed by this request does not diminish that the names of five specific organizations have

The Court now turns to request 1.8 as it relates to this category.[14]  As applied, request 1.8 seeks documents showing a relationship between Edgewood or Congress Park and the organizations listed in category 17.  Were Bell seeking documents or information merely to demonstrate these relationships, the request might be specific enough.  However, what Bell really seeks are documents showing a link between himself and these organizations.  The language of request 1.8 does not cover such a relationship.  As such, the Court will not require Edgewood to respond to category 17.  However, the Court will permit Bell to request documents indicating that he participated with other organizations that worked with Edgewood or Congress Park Apartments, provided he identifies the specific organizations and the specific period during which he worked with them.

**K.    Category No. 19: Shootings, Murders, Etc.**

The List's last category, titled "Shootings, Murders, Etc.," makes the following request:[15]

a.    Any and all incidents of shootings, murders, or other acts of violence in the Congress Park housing that is under Edgewood Management and that there would be records for such incidents for the time period 2000 to 2004.

(Edgewood Mot. for Prot. Order, Ex. 1.)  Edgewood objects to this request on the grounds that, among other things, the request is overbroad and no relevance has been shown for any responsive documents.  (*Id.* at 12, 13.)  The Court agrees.  First, the request lacks any semblance of specificity.  It mentions no specific incidents or documents.  It is possible that many Edgewood

---

been clearly designated in items 17.1-17.5.

[14]Request 1.4 is inapplicable to this category.

[15]The Court will not address requests 1.4 and 1.8 here, as they do not relate to this category.

records pertaining to this request do not relate to Bell's defense in any way.  Thus, the Court will

not require Edgewood to respond to List category 19.

### L.    Other Privacy Concerns

Pursuant to its concerns for the privacy and safety of its tenants, Edgewood requests a

court order limiting the persons who may have access to any documents produced by Edgewood

to Bell's Counsel.  Specifically, Edgewood requests that the produced documents be used only by

Bell's Counsel, his partners, associates, assistants and investigators and not shared in any way

with any of the defendants or witnesses for the defendants in this case—including Bell himself.

Edgewood also requests that Bell's Counsel maintain the documents with confidentiality and

under seal.

The Court finds that Edgewood's concerns are legitimate and thus will grant its request

for such an order.

### IV.    The February 7, 2007 Jones Subpoena

DeCola Jones, an employee of Edgewood, filed a Motion for Protective Order regarding

the February 7 Subpoena issued for her.  (*See generally* Jones Mot.)  In her Motion, Ms. Jones

argues that she cannot produce the requested documents because she is not the custodian of

books and records for Congress Park Apartments or Edgewood.  (*See id.* at 3, 5.)  According to

Jones, she has no personal knowledge of "the criminal events that led to the charges against

Defendant Gregory Bell."  (*Id.* at 3.)

Jones also argues that Bell's requests are far too broad and generalized, and that he has

not shown how responsive records would be relevant or admissible.  (*See id.* at 11-16.)  Also,

17

according to Jones, her Subpoena calls for the potentially dangerous release of private information about third parties.  (*See id.* at 7-10, 18.)

Jones requests that the Court not require her to produce any documents responsive to the Subpoena unless she is the custodian of such documents.  (*See* Jones Mot., Proposed Order.)  To the extent that she is the custodian of any documents, Jones asks that the Court limit the scope of her Subpoena.  (*See id.*)  Jones also asks that the Court limit the scope of her testimony in response to the subpoena.  (*See id.*)

The dispute surrounding the Jones Subpoena largely has been resolved.  At the February 23 hearing, counsel for Jones agreed to have Jones appear at the trial in response to her Subpoena.  (*See* Hr'g Tr. at 4:14-15, 4:20.)  Also, Ms. Jones apparently is not the custodian of books and records for Edgewood, nor does Bell's Counsel claim she is (*see* Hr'g Tr. at 4:07-10).  Moreover, Edgewood has already accepted service of its February 12 Subpoena, which contains a virtually identical List of Requested Documents.  (*See* Edgewood Mot. for Prot. Order at 2 n.2 (conceding that the February 12 Subpoena was validly served upon its registered agent).)[16]

The remaining issues for the Court to decide are thus (1) whether it should narrow the scope of Jones's testimony and (2) whether Jones should be required to produce *any* documents in response to her Subpoena.  On the first issue, the Court declines to limit what topics Ms. Jones will be required to testify about before the trial court.  Ms. Jones may well have personal

---

[16]Edgewood objects to service of the February 12 Subpoena insofar as, *inter alia*, it is not addressed to the custodian of books and records for Edgewood.  Edgewood agrees to withdraw this objection, however, if counsel of Bell agrees to revise the Subpoena accordingly.  (*See* Edgewood Mot for Prot. Order at 1 n.1.)

knowledge regarding information that was requested in her Subpoena.  Jones may assert any appropriate objections to her testimony during trial.

Regarding the second issue, the Court will require Ms. Jones to produce only documents over which she has actual custody or control.  Jones's obligation to respond to these document requests shall be subject to the same limitations as those imposed in relation to Edgewood's February 12 Subpoena.[17]

## V.     Edgewood's Motion for Protective Order/Motion to Reconsider Minute Order

In preparation for trial in Bell's criminal case, the Government issued a subpoena *duces tecum* to Edgewood ("Edgewood Government Subpoena").  In response to this subpoena, Edgewood turned over a set of documents to the Government in electronic form.

At the close of the February 23 hearing, Bell's Counsel requested that the Court order Edgewood to turn over all of the documents that it had already provided the Government.  (*See* Hr'g Tr. at 5:14-5:15.)  Counsel for Edgewood agreed to turn over these documents to Bell's Counsel and requested that the Court order Edgewood to do so.  (*See id.* at 5:15.)  The Court obliged, issuing a Minute Order to this effect on February 26, 2007.  *See* Feb. 26, 2007 Minute Order, *United States v. Bell*, misc. case no. 07-mc-069 (RWR) (AK).

On March 6, 2007, Edgewood filed a Motion for Protective Order/Motion to Reconsider Minute Order ("Motion to Reconsider").  In this Motion, Edgewood argues that not all of the documents responsive to the Edgewood Government Subpoena are necessarily responsive to the February 12 Subpoena.  (*See* Mot. to Reconsider at 10.)  Furthermore, according to Edgewood,

---

[17]*See* discussion, *supra*, at Section III.

this set of documents contains private information about individuals that, if released, could expose those individuals to harm. (*See id.* at 10-14.) Edgewood requests that its obligation to provide these documents be subject to the same limitations as those imposed by the Court in responding to Edgewood's February 12 Subpoena.[18] (*See id.* at 3.)

Upon receiving Edgewood's Motion to Reconsider, the Court issued a second Minute Order, which stayed the February 26 Minute Order until further notice. *See* March 8, 2007 Minute Order, *United States v. Bell*, misc. case no. 07-mc-069 (RWR) (AK).

After considering Edgewood's Motion to Reconsider, and noting the third-party privacy concerns cited therein, the Court agrees that Edgewood should not be required to provide Bell's Counsel with all of the documents that it has turned over to the Government. The Court will accordingly vacate the February 23 Minute Order. From the set of documents that it provided to the Government, Edgewood shall provide Bell's Counsel with only those documents that are responsive to the February 12 Subpoena. Edgewood shall note that its obligations to respond to the February 12 Subpoena have been limited by the Court's ruling on Edgewood's February 20 Motion for Protective Order.[19]

---

[18]In the alternative, Edgewood requests that the Court "modify the Minute Order to allow [Edgewood] to comply by turning over to the Court all documents and information previously provided by the Government . . . and having the Court perform an in camera review of same[.]" (Mot. to Reconsider at 3.) The Court declines to grant this avenue of relief.

[19]*See* discussion, *supra*, at Section III.

**VII.    Conclusion**

For the foregoing reasons, it is this   26th   day of March, 2007, hereby

**ORDERED** that Edgewood's February 20 Motion for Protective Order is **GRANTED in part and DENIED in part** in the following manner:

1)      The scope of Edgewood's response to the February 12 Subpoena shall be limited to the time period between 1999 and the present.  However, where the Subpoena indicates a narrower time period, the narrower time period shall apply;

2)      Regarding category 1, Edgewood shall not be required to respond to requests 1.1, 1.2, 1.3, 1.5, 1.6 and 1.7;

3)      Regarding category 2, Edgewood shall not be required to respond to requests 2.1 and 2.1.4.  However, Edgewood shall respond to requests 2.1.1, 2.1.2 and 2.1.3 by providing documents showing that Defendant Bell worked for Edgewood, its affiliates or other companies with which Edgewood had business dealings;

4)      Regarding categories 3, 6 and 18, Edgewood shall provide documents containing forwarding addresses and phone numbers for "Rene Cunningham," "Toya Gibbs" and "Bonnie Williams;"

5)      Edgewood shall respond to the lease requests in categories 4, 7, 9 and 11. However, Edgewood shall not be required to respond to requests 4.3, 7.3 and 9.3;

6)      Regarding categories 5 and 8, Edgewood shall produce lease agreements for "Gail Parson" and "Charlette O'Brien" for the relevant time period.  Edgewood shall also provide documents containing forwarding addresses and phone numbers for these individuals;

21

7)      Edgewood shall not be required to respond to any part of category 10;

8)      Wallace "Pete" Clark's Motion for Protective Order is also **GRANTED in part and DENIED in part**.  Regarding category 12, Edgewood shall provide all documents reflecting that Wallace "Pete" Clark was an employee of Edgewood or any of its affiliates during the relevant time period.  Also, Edgewood shall redact any private information from responsive documents, such as Mr. Clark's social security number and salary information.

9)      As agreed, Edgewood shall respond to categories 13, 14, 15 and 16;

10)     Edgewood shall not be required to respond to any part of category 17 at this time.  However, Bell may request documents indicating that he participated with other organizations that worked with Edgewood or Congress Park Apartments, provided he identifies the specific organizations and the specific period during which he worked with them.

11)     Edgewood shall not be required to respond to any part of category 19;

12)     Any documents released by Edgewood to Bell's Counsel, James Beane, pursuant to this Order shall be used only by Beane and his law partners and associates, legal assistants, paralegals and investigators and shall not be released, shown, copied or otherwise shared with any of the defendants or witnesses for the defendants in this criminal case.  All such records provided by Edgewood to Beane shall be maintained with confidentiality and under seal;

and it is

**FURTHER ORDERED** that DeCola Jones's Motion for Protective Order is **GRANTED in part and DENIED in part**.  Jones's request that the scope of her testimony be limited is **DENIED without prejudice** to any appropriate objections to her testimony she may raise during trial.  In response to the documents requested in her Subpoena, Jones shall be required to produce only documents over which she has actual custody or control.  Jones's obligation to produce such documents shall be subject to the same limitations as those imposed by the Court in relation to Edgewood's February 20 Motion for Protective Order; and it is

**FURTHER ORDERED** that Edgewood's March 8 Motion for Protective Order/Motion to Reconsider Minute Order is **GRANTED**.  The Court's February 23 Minute Order, entered in misc. case no. 07-mc-069, is hereby **VACATED**.  From the set of documents that it provided to the Government, Edgewood shall provide Bell's Counsel with only those documents that are responsive to the February 12 Subpoena, as limited by this Order.

**SO ORDERED**.

 /s/

ALAN KAY
UNITED STATES MAGISTRATE JUDGE

23